UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

ROBERT PRIGNOLI,

                Plaintiff,

          v.

THATY BRUCZYNSKI *a/k/a* THATY MILAN
*a/k/a* THATY ANNI BRUCZYNSKI *a/k/a*
TATIANA MILAN *a/k/a* TATI-NANNIK MILAN,
AMAZON.COM, INC., and SYNCHRONY
BANK,

                Defendants.

--------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-907 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Robert Prignoli, proceeding *pro se*,[1] commenced the above-captioned action on

January 13, 2020, in the New York Supreme Court, Richmond County, against Defendants Thaty

Bruczynski — also known as Thaty Milan, Thaty Anni Bruczynski, Tatiana Milan, and Tati-

Nannik Milan — Amazon.com, Inc. ("Amazon"), PayPal Holdings, Inc., eBay Inc., and T-

Mobile US Inc.  (Notice of Removal ¶ 1, Docket Entry No. 1; Compl., annexed to Notice of

Removal as Ex. A, Docket Entry No. 1-1, at 4–5.)  On February 18, 2020, Plaintiff filed an

---

[1] Plaintiff is a licensed attorney and is therefore not afforded the special latitude traditionally afforded to *pro se* plaintiffs.  *See Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020) ("[A]lthough '[i]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants' based on '[t]he rationale . . . that a *pro se* litigant generally lacks both legal training and experience, a lawyer representing himself ordinarily receives no such solicitude at all." (second and third alterations in original) (citation omitted) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010))); *Bank v. U.S. Dep't of Health & Hum. Servs.*, 708 F. App'x 43, 44 (2d Cir. 2018) (noting that the plaintiff is "an attorney proceeding *pro se*" and declining to afford him special latitude).

Amended Complaint, removing Defendant eBay Inc. and adding Defendant Synchrony Bank.[2] (Am. Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1, at 50.)  On February 19, 2020, Amazon removed the action to this Court on the basis of diversity jurisdiction, (Notice of Removal), and on May 15, 2020, Plaintiff filed a proposed second amended complaint (the "SAC") alleging that Bruczynski made unauthorized transfers of funds from Plaintiff's bank account to Defendants Amazon and Synchrony Bank (the "Corporate Defendants") to pay for various expenses and that the Corporate Defendants processed these transfers without verifying the account holder.  (SAC, annexed to Letter by Robert Prignoli dated May 28, 2020, as Ex. 1, Docket Entry No. 37-1).[3]  Plaintiff brings claims for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA"), and the New York General Business Law ("GBL") §§ 349 and 380-s, as well as for conversion and negligence under the New York common law.  (*Id.*)  The Corporate Defendants now move to dismiss the SAC pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[4]

---

[2]  Defendants T-Mobile US Inc. and PayPal Holdings, Inc., are no longer parties to the case.  (Stip. of Dismissal, Docket Entry No. 44; Stip. of Dismissal, Docket Entry No. 46.)

[3]  Plaintiff did not move for leave to file the first Amended Complaint and Amazon initially did not consent to the proposed SAC.  (Letter by Amazon.com, Inc. dated June 10, 2020, at 1, Docket Entry No. 42.)  However, the Corporate Defendants later consented to the proposed SAC "in order to facilitate [their] motion to dismiss."  (Letter Mot. for Pre-Mot. Conference 1, Docket Entry No. 48); *see* Fed. R. Civ. P. 15 ("[A] party may amend its pleading . . . with the opposing party's written consent or the court's leave.).

[4]  (Defs.' Mot. to Dismiss, Docket Entry No. 53; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 53-1; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 55; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 54.)

For the reasons set forth below, the Court grants Defendants' motion, dismisses the SAC, and grants Plaintiff leave to file a third amended complaint within thirty days.

## I.   Background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

### a.   The parties

Prignoli is an attorney and resident of New Jersey, (Notice of Removal ¶ 1; *see* SAC 20), with an office located in New York, (SAC ¶ 1).  Defendant Bruczynski is an individual residing in New York, and the Corporate Defendants — Amazon and Synchrony Bank — are foreign corporations with offices located in New York and New Jersey, respectively.  (SAC ¶¶ 2–4.)

### b.   Alleged unauthorized electronic fund transfers

Plaintiff owns a "bank account" at Victory State Bank.  (*Id.* ¶¶ 5, 7.)  On February 1, 2019, Bruczynski began using her cellular telephone to initiate unauthorized electronic fund transfers ("EFTs") from Plaintiff's account to the Corporate Defendants to pay for personal expenses, credit card invoices, and other transactions using their pay-by-phone systems, which did not require her to input the account owner's name.[5]  (*Id.* ¶¶ 10–15, 22.)  The Corporate Defendants processed the EFTs without obtaining Plaintiff's consent or confirming whether Bruczynski was authorized to access Plaintiff's account or initiate the transactions.  (*Id.* ¶¶ 19, 23–24.)  Plaintiff was unaware of the EFTs until January 3, 2020.  (*Id.* ¶¶ 20, 29.)  By January 6, 2020, Defendants had withdrawn more than $103,000 from Plaintiff's account.  (*Id.* ¶¶ 7, 16.)

---

[5]  It is unclear from the SAC the exact date in February of 2019 that the unauthorized EFTs began.  (*Compare* SAC ¶¶ 5, 7 (alleging that the EFTs began on February 1, 2019), *with id.* ¶ 13 (alleging that the EFTs began on February 10, 2019), *and id.* ¶ 16 (listing EFTs beginning February 28, 2019).)

3

### c. Funds remitted and retained

Although Victory State Bank reversed approximately $55,000 worth of the unauthorized

EFTs, (*id.* ¶ 8), Amazon retains control of $23,032.11 and Synchrony Bank retains control of

$17,841.22 from Plaintiff's account, including "$4,752.61 for its E-Bay branded Credit Card and

$13,088.61 for its PayPal branded Credit Card," for a combined total of $40,873.33,[6] (*id.* ¶¶ 16,

26; Pl.'s Opp'n 7).  Accordingly, Plaintiff seeks damages in the amount of $40,873.33, legal

fees, and declaratory relief.  (SAC 19–20.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the "complaint liberally, accepting all factual allegations in the

complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Vaughn v.*

*Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).  A complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time*

*Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A claim is plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986

F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations

---

[6]  The SAC does not contain any allegations as to the at least $7,126.67 not accounted for
by these numbers.  (*Compare id.* ¶ 7 (alleging more than $103,000 in unauthorized EFTs), *with*
*id.* ¶ 26 (alleging $55,000 remitted and $40,873.33 retained, for a total of $95,873.33).)

contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. EFTA violations claims

Defendants argue that Plaintiff's claims for "violations of the EFTA" fail as a matter of law because Plaintiff's bank account is an attorney trust account and the EFTA does not apply to such accounts. (Defs.' Reply 3–4.) In addition, Defendants argue that the Court should dismiss these claims (1) as against Amazon because Amazon is not a "financial institution," (2) under Rule 8 because the SAC does not identify a provision of the EFTA that Defendants violated and instead merely cites 12 C.F.R. §§ 205.6 and 1005.3, and (3) under Rule 12(b)(6) because Plaintiff fails to state claims under these regulations. (Defs.' Mem. 4–6.) Defendants also argue that Plaintiff fails to state a claim under 15 U.S.C. § 1693h(a)(1), as raised in his opposition, because he alleges that they "accepted" rather than failed to make EFTs. (Defs.' Reply 4–5.)

Plaintiff argues that "individuals have a private right of action" under the EFTA's implementing regulations, commonly known as "Regulation E," against financial institutions that violate the EFTA and that the EFTA itself "provides consumers the ability" to recover from financial institutions for "unauthorized EFTs" and "failure to obtain written consent for a pre[-]authorized EFT." (Pl.'s Opp'n 13.) Therefore, Plaintiff argues, Defendants violated the EFTA by "initiat[ing] unauthorized EFTs" from his account "without any written consent by him or written notice to him." (*Id.*) In addition, Plaintiff argues that Defendants violated 12 C.F.R. § 1005.3 "by the failure to obtain Plaintiff's consent for the EFTs." (*Id.* at 19.)

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Section 1693h(a) of the EFTA sets forth the liability of financial institutions and provides that:

> [A] financial institution shall be liable to a consumer for all damages proximately caused by —
>
> (1) The financial institution's failure to make an [EFT], in accordance with the terms and conditions of an account, in the correct amount or in a timely manner when properly instructed to do so by the consumer . . .
>
> (2) the financial institution's failure to make an [EFT] due to insufficient funds when the financal [sic] institution failed to credit, in accordance with the terms and conditions of an account, a deposit of funds to the consumer's account which would have provided sufficient funds to make the transfer, and
>
> (3) the financial institution's failure to stop payment of a preauthorized transfer from a consumer's account when instructed to do so in accordance with the terms and conditions of the account.

15 U.S.C. § 1693h(a). The EFTA "contain[s] several relevant definitions that limit the reach of this substantive provision." *Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160, 2009 WL 1767621, at *3 (S.D.N.Y. June 22, 2009). The statute defines "consumer" as a "natural person," 15 U.S.C. § 1693a(6), and "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly, or indirectly, holds an account belonging to a consumer," *id.* § 1693a(9). The statute in turn defines an "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes." *Id.* § 1693a(2); *see also* 12 C.F.R. § 1005.2(b). Finally, an EFT is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account," 15 U.S.C. § 1693a(7), and a preauthorized EFT ("PEFT") is defined as "an [EFT] authorized in advance to recur at substantially regular intervals," *id.* § 1693a(10). Accordingly, "[t]o state a claim under the EFTA, [a] plaintiff must allege that the accounts in question 1) were 'demand deposit,

6

savings deposit, or other asset account[s]'; 2) 'established primarily for personal, family, or household purposes'; and 3) that the unauthorized 'electronic fund transfer' was 'initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account.'" *Zaidi v. JP Morgan Chase Bank, N.A.*, No. 19-CV-1080, 2021 WL 848864, at *3 (E.D.N.Y. Mar. 5, 2021) (third alteration in original) (quoting *Apostolidis v. JP Morgan Chase & Co.*, No. 11-CV-5664, 2012 WL 5378305, at *5 (E.D.N.Y. 2012)).

### i. Plaintiff fails to identify a relevant EFTA provision

Plaintiff fails to identify which sections of the EFTA Defendants violated and instead asserts that 12 C.F.R. § 1005.3 provides a private cause of action[7] — an issue the parties have not briefed except for a single citation in Plaintiff's opposition to a case involving a different regulation.[8]  However, even assuming this regulation provides a private cause of action and

---

[7] Although the SAC also cites to 12 C.F.R. § 205.6, this regulation does not concern the liability of financial institutions under the EFTA but rather what a *consumer* must do to avoid liability for unauthorized EFTs.  *See* 12 C.F.R. § 205.6(b)(3) ("A consumer must report an unauthorized [EFT] that appears on a periodic statement within [sixty] days of the financial institution's transmittal of the statement to avoid liability for subsequent transfers.").  In addition, Plaintiff does not make any arguments based on this regulation.  (*See generally* Pl.'s Opp'n.)  Accordingly, the Court does not consider it.

[8] (*See* Pl.'s Opp'n 13 (arguing that "[i]t has been held that under Regulation E, individuals have a private right of action against a [f]inancial [i]nstitution who violates the EFTA" (citing *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 492–94 (E.D.N.Y. 2020)))).  In *Lussoro*, the court acknowledged that the "EFTA provides a private right of action for violations of the EFTA."  456 F. Supp. 3d at 493 (quoting *Archbold v. Sols. Fed. Credit Union*, No. 12-CV-364, 2012 WL 5617845, at *2 (W.D.N.Y. Nov. 15, 2012)); *see also* 15 U.S.C. § 1693m (creating private right of action for EFTA violations).  The court noted that because the EFTA "contains an explicit private right of action, the [c]ourt must look to the regulatory provisions relied upon . . . to determine if they apply, rather than expand, [the] EFTA's statutory language."  *Lussoro*, 456 F. Supp. 3d at 493 (citing *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 117–18 (2d Cir. 2011)).  The court found that the "EFTA's private right of action extends to . . . 12 C.F.R. § 1005.17," the specific provision relied on, because it "only applies, rather than expands, [the] EFTA's provisions."  *Id.* at 494.

7

construing the SAC as raising claims for unauthorized EFTs and PEFTs under sections 1693h(a)(1) and 1693e(a) of the EFTA, Plaintiff fails to state a claim.

### 1.   12 C.F.R. § 1005.3

First, 12 C.F.R. § 1005.3, the violation of which Plaintiff alleges as a cause of action separate from his unidentified EFTA claims, (SAC ¶¶ 18, 81–83; Pl.'s Opp'n 18–19), concerns EFTs that are based on information from a physical check, *see* 12 C.F.R. § 1005.3(b)(2).  As Defendants note, Plaintiff does not allege that any transaction occurred in connection with a physical check.  Rather, he alleges that the EFTs were made by credit card, at least with respect to Synchrony Bank.  (Defs.' Mem. 13 (citing SAC ¶ 16).)  In addition, although Plaintiff states in his opposition that the account number and routing number Bruczynski "used to initiate the illegal EFTs" were "expropriated from [his] physical check," (Pl.'s Opp'n 19), and although a court normally may consider and assume the truth of factual allegations made by a *pro se* plaintiff in their opposition to a motion to dismiss to the extent such allegations are consistent with the plaintiff's pleading, *see Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), as noted, Plaintiff is not entitled to this special solicitude, *see Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020), and these new allegations are inconsistent with what Plaintiff alleged in the SAC, (SAC ¶ 16).  Finally, even assuming section 1005.3 provides a private cause of action, it appears that action would lie against Bruczynski rather than the Corporate Defendants, given that Plaintiff alleges it was Bruczynski who initiated the EFTs.  *See* 12 C.F.R. § 1005.3(b)(2) (stating that "the person initiating an [EFT] . . . must provide a notice that the transaction will or may be processed as an [EFT], and obtain a consumer's authorization for each transfer").

**2.    15 U.S.C. §§ 1693h(a)(1) and 1693e(a)**

Second, although the Court is not required to liberally construe the SAC or consider

claims raised for the first time in Plaintiff's opposition given that he is an attorney, even if the

Court did so and construed Plaintiff's assertions of "unauthorized EFTs" and "failure to obtain

written consent for [PEFTs]" as claims under 15 U.S.C. §§ 1693h(a)(1) and 1693e(a),

respectively, Plaintiff fails to state a claim.  (*See* Pl.'s Opp'n 12–13.)  Under section 1693h(a)(1),

financial institutions may be held liable for "failure to make an [EFT], in accordance with the

terms and conditions of an account, in the correct amount or in a timely manner when properly

instructed to do so by the consumer."  15 U.S.C. § 1693h(a)(1).  Under section 1693e(a), a PEFT

"may be authorized by the consumer only in writing and a copy of such authorization shall be

provided to the consumer when made."  *Id.* § 1693e(a).  As Defendants argue, Plaintiff has not

alleged that they "failed to make" EFTs after he properly instructed them to do so, as required by

section 1693h(a)(1), or that the EFTs at issue were pre-authorized (i.e., "authorized in advance to

recur at substantial regular intervals"), as required by sections 1693e(a) and 1693a(10) (defining

PEFT).  (*See generally* SAC.)

Accordingly, even assuming that the EFTA's private right of action extends to 12 C.F.R.

§ 1005.3 and construing the SAC as raising EFTA claims under sections 1693h(a)(1) and

1693e(a), Plaintiff fails to state these claims.

**ii.    Plaintiff fails to allege an account covered by the EFTA**

Plaintiff fails to state a claim for an EFTA violation for the additional reason that he has

not plausibly alleged that his "bank account" falls within the EFTA's definition of an account.

*See* 15 U.S.C. § 1693a(2) (defining "account" as "a demand deposit, savings deposit, or other

asset account . . . established primarily for personal, family, or household purposes"); *see also* 12

9

C.F.R. § 1005.2(b) (stating that "'[a]ccount' means a demand deposit (checking), savings, or

other consumer asset account (other than an occasional or incidental credit balance in a credit

plan) held directly or indirectly by a financial institution and established primarily for personal,

family, or household purposes" and that "[t]he term does not include an account held by a

financial institution under a bona fide trust agreement"); *see also Zaidi*, 2021 WL 848864, at *4

(noting that a covered account is a "demand deposit, savings deposit, or other asset account . . .

established primarily for personal, family, or household purposes").

        "To state a claim under the EFTA, [a] plaintiff must allege that the accounts in question

1) were 'demand deposit, savings deposit, or other asset account[s]'; 2) 'established primarily for

personal, family, or household purposes'; and 3) that the unauthorized 'electronic fund transfer'

was 'initiated through an electronic terminal, telephone, computer, or magnetic tape for the

purpose of ordering, instructing, or authorizing a financial institution to debit or credit a

consumer's account.'" *Zaidi*, 2021 WL 848864, at *4 (second alteration in original) (quoting

*Apostolidis*, 2012 WL 5378305, at *5); *Bodley v. Clark*, No. 11-CV-8955, 2012 WL 3042175, at

*4 (S.D.N.Y. July 23, 2012) (noting same and dismissing *pro se* plaintiff's EFTA claim because

even "[a]ssuming arguendo that [the] plaintiff's [bank] accounts . . . were for 'personal, family,

or household purposes,'" the plaintiff also failed to allege the third element). An account used

for commercial purposes does not fit within the definition of a covered account. *See Maynard v.

Paypal, Inc.*, No. 18-CV-259, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) (granting

motion to dismiss EFTA claim where the "second amended complaint [did] not permit an

inference that the . . . account in question was 'established primarily for personal, family, or

household purposes'" but rather only the "inference that [it] was used for commercial

transactions"); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010)

(granting motion to dismiss EFTA claim where the plaintiffs were business entities and their accounts were therefore not consumer accounts but accounts established for a commercial purpose); *cf. Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 209 (S.D. Tex. June 27, 2011) (finding allegations that account was a "checking account used primarily for personal or household purposes" sufficient to state a claim); *Cobb v. Monarch Fin. Corp.*, 913 F. Supp. 1164, 1174–75 (N.D. Ill. 1995) (finding allegations that account received direct deposits from the plaintiff's paychecks and was used to pay off personal loans sufficient).

Plaintiff fails to state a claim for a violation of the EFTA because he has failed to allege that the account in question was a "demand deposit, savings deposit, or other asset account" that was "established primarily for personal, family, or household purposes" and has instead merely alleged that he owns a "bank account" at Victory State Bank.[9]  (SAC ¶¶ 5, 7); *see Zaidi*, 2021

---

[9]  Defendants also argue that Plaintiff's claims fail as a matter of law because they are all based on EFTs from Plaintiff's attorney trust account, which is not an "account" covered by the EFTA.  (Defs.' Reply 4 (citing *Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-CV-1160, 2009 WL 1767621, at *3–4 (S.D.N.Y. June 22, 2009) (holding that because "the EFTA does not apply to accounts that are used primarily or solely for commercial purposes" and because attorney trust accounts are, "by definition, . . . account[s] that [are] established purely for commercial reasons," the EFTA does not apply to attorney trust accounts)).)  In support, Defendants note that Plaintiff attached bank statements to his initial Complaint that identified the account as "Attorney Trust Account II" and that Plaintiff redacted these words when he attached the same statements to his Amended Complaint.  (*Id.* at 4 & n.2 (first citing Bank Statements, annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1, at 12–40; and then citing Redacted Bank Statements, annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1, at 57–85).)  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  Although the SAC states that "[a] copy of the [a]ccount statements is attached hereto," (SAC ¶ 7), Plaintiff filed the SAC "without the duplicate Bank Statement exhibits," (Pl.'s Letter dated May 28, 2020, Docket Entry No. 37), and the SAC's reference to the statements is not enough to consider them incorporated by reference in or integral to the SAC, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents . . . is not enough to incorporate those documents, wholesale, into the

WL 848864, at *3 (noting that such allegations are required to state a claim under the EFTA); *Apostolidis*, 2012 WL 5378305, at *5 (same); *Bodley*, 2012 WL 3042175, at *4 (same).

Accordingly, the Court dismisses Plaintiff's EFTA claims.

### c.   GBL § 349 claim

Defendants argue that Plaintiff's GBL § 349 claim fails because (1) Plaintiff has failed to allege "facts showing that he was misled or deceived by [Defendants]" and has instead stated that he had no contact with Defendants at any time, (Defs.' Mem. 7), and (2) Plaintiff has not alleged that any deception that may have occurred has "ramifications for the public at large," as Defendants' acceptance of payments from Plaintiff's account would only affect Plaintiff, (*id.* at 7–8; Defs.' Reply 6).

Plaintiff argues that (1) Defendants' processing of "improper EFTs" without first verifying the account holder constituted a deceptive and dishonest business practice, (2) Defendants' conduct was directed at the public at large because Defendants "market[ed] . . . almost exclusively to individual consumers," executed improper EFTs, and failed to "verify the [a]ccount holder and [return] stolen [funds]," and (3) Plaintiff has demonstrated injury from Defendants' conduct by "itemizing each illegal unauthorized EFT from the [a]ccount." (Pl.'s Opp'n 14–16.)

---

complaint."); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (not integral if "merely mention[ed]"). The Court may take judicial notice of the bank statements attached to Plaintiff's initial pleading to establish the fact that they contain the statement "Attorney Trust Account II" but not for the truth of the matter asserted. *See 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 206 (S.D.N.Y. 2015) (noting that "when a court takes judicial notice of documents in the public record at the [m]otion [t]o [d]ismiss stage," it may consider them "only to establish their existence and legal effect[] or to determine what statements they contained [but] not for the truth of the matters asserted" (quoting *Liang v. City of New York*, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013))). However, the Court notes that an attorney trust account does not fall within the definition of an "account" covered by the EFTA. *See Fischer*, 2009 WL 1767621, at *3–4.

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

As to the first element, "an act or practice is consumer-oriented when it has 'a broader impact on consumers at large.'" *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021) (first quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); and then citing *N.Y. Univ. v Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995)), *reh'g denied*, --- N.E.3d ---, ---, 2021 WL 4189227 (Sept. 15, 2021); *see also Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 490 (2d Cir. 2014) (same). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego*, 623 N.Y.2d at 25); *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015) (same). However, "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Crawford*, 758 F.3d at 490 (quoting *Oswego*, 85 N.Y.2d at 25); *Himmelstein*, 37 N.Y.3d at 177 (same). "[W]hen a plaintiff 'makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed.'" *Green v. Cap. One, N.A.*, No. 20-CV-4655, 2021 WL 3810750, at *9 (S.D.N.Y. Aug. 26, 2021) (quoting *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015)). As to the second element, "an act

13

or practice that is deceptive or misleading in a material way is defined as a representation or

omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"

*People ex rel. Schneiderman v. One Source Networking, Inc.*, 3 N.Y.S.3d 505, 508 (App. Div.

2015) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)); *see also*

*Chufen Chen*, 954 F.3d at 500 ("'Deceptive acts' are acts that are 'likely to mislead a reasonable

consumer acting reasonably under the circumstances.'" (quoting *Fink v. Time Warner Cable*, 714

F.3d 739, 741 (2d Cir. 2013))); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107,

124 (2d Cir. 2017) ("Whether a representation or an omission, the deceptive practice must be

likely to mislead a reasonable consumer acting reasonably under the circumstances." (first

quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000); and then citing *Oswego*, 85 N.Y.2d

at 25)).  "Material omissions may give rise to a claim where 'the business alone possesses

material information that is relevant to the consumer and fails to provide this information.'"

*Marbury v. Pace Univ. (In re Columbia Tuition Refund Action)*, --- F. Supp. 3d ---, ---, 2021 WL

790638, at *10 (S.D.N.Y. Feb. 26, 2021) (quoting *Oswego*, 85 N.Y.2d at 26).  "The key, of

course, is that the defendant 'possess' the information that the plaintiff claims it improperly

withheld."  *Espejo v. Cornell Univ.*, No. 20-CV-467, 2021 WL 810159, at *9 (N.D.N.Y. Mar. 3,

2021) (quoting *In re Sling Media Slingbox Adver. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y.

2016)).  "Thus, plaintiffs pursuing an omission-based claim must 'plausibly allege that the . . .

defendants had knowledge of the material information and failed to disclose or actively

concealed such information . . . .'"  *Id.* (quoting *In re Sling*, 202 F. Supp. 3d at 359).  "In other

words, a defendant's failure to reveal facts about which even it was unaware at the time will not

lead to liability under [§] 349."  *Id.* (quoting *In re Sling*, 202 F. Supp. 3d at 359).  "The New

York Court of Appeals' adoption of an 'objective definition of deceptive acts and practices . . .

14

which may be determined as a matter of law or fact (as individual cases require),' was intended to avoid 'a tidal wave of litigation against businesses that was not intended by the Legislature.'" *Nick's Garage, Inc.*, 875 F.3d at 124 (quoting *Oswego*, 85 N.Y.2d at 26).   "Practices courts have found to be deceptive include 'false advertising, pyramid schemes, deceptive preticketing, misrepresentation of the origin, nature or quality of the product, false testimonial, deceptive collection efforts against debtors, deceptive practices of insurance companies, and 'Bait and Switch' operations.'"   *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (App. Div. 1995)).   As to the third element, "[t]he plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury."   *Stutman*, 95 N.Y.2d at 29 (quoting *Oswego*, 85 N.Y.2d at 26).

Plaintiff fails to state a GBL § 349 claim because he fails to plausibly allege that Defendants' conduct affected the public at large and was misleading in a material way.   First, although Plaintiff alleges that he is "not the only victim of . . . unauthorized EFTs in the United States," (SAC ¶ 47), that "[a]ny unsuspecting consumer can fall victim" to the same conduct that "Defendants performed on Plaintiff," (*id.* ¶ 46), that "it is clear that EFTs are consumer . . . oriented transactions that affect the public at large," (*id.* ¶ 49), and that Defendants' "roles in the [i]llegal EFTs have ramifications to the consumer public at large," (*id.* ¶ 45), he has not pled facts beyond these conclusory allegations to support an inference that Defendants' conduct with respect to *his* account affected the public at large.   *See, e.g.*, *Green*, 2021 WL 3810750, at *9 (granting motion to dismiss GBL § 349 claim premised on unauthorized EFTs because "the disputed transactions were direct transfers between private parties" and thus did not affect the public at large); *Schroeder v. Cap. One Fin. Corp.*, 665 F. Supp. 2d 219, 226 (E.D.N.Y. 2009) (finding that the plaintiff failed to state a GBL § 349 claim when he alleged that a bank

improperly transferred money from his account to an unauthorized third party because there was no evidence that the alleged misconduct impacted a number of customers).

Second, Plaintiff argues that it was "objectively" deceptive for Defendants to process EFTs from his account without verifying the account holder.[10]  (Pl.'s Opp'n 15.)  However, other than his conclusory allegations that this conduct constitutes a deceptive and dishonest business practice, (SAC ¶¶ 52, 54–56), Plaintiff has not pled facts to support an inference that this conduct misled or deceived him in a material way.  Plaintiff does not allege that Defendants made an affirmative representation to him that misled him, as he apparently had no contact with the Corporate Defendants and was not aware of their allegedly deceptive acts for almost a year. *Wood v. Cap. One Servs., LLC*, 718 F. Supp. 2d 286, 291–92 (N.D.N.Y. 2010) (dismissing claim that bank engaged in deceptive act where the plaintiff had not and could not allege that the bank ever communicated with him because the complaint clearly alleged it was the bank's affiliate that communicated with him); *see also In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 860 (S.D. Ohio 2012) (granting importer's motion to dismiss New York purchasers' GBL § 349 claim to the extent it was premised on allegations of affirmative representations because the purchasers did "not plead any facts suggesting that they

---

[10]  Plaintiff relies on *Breitman v. Xerox Education Services, LLC*, No. 12-CV-6583, 2013 WL 5420532, at *3 (S.D.N.Y. Sept. 27, 2013), and *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 419 (E.D.N.Y. 2013), for the proposition that the processing of unauthorized EFTs is an "objectively deceptive" practice.  In *Breitman*, the court found that "[a] financial institution's failure to properly implement an agreement with a customer by improperly crediting a customer's account for their payments . . . [was] objectively deceptive."  2013 WL 5420532, at *3 (citing *Dolan*, 930 F. Supp. at 419).  In *Dolan*, the court denied summary judgment because a question of fact existed as to whether a loan servicer had intentionally failed to credit payments to an account pursuant to a forbearance agreement in order to subject the plaintiff to foreclosure proceedings, suggesting that such a practice could be deceptive.  *See* 930 F. Supp. at 419.  Unlike the plaintiffs in these cases, Plaintiff has not alleged the existence of an agreement between himself and Defendants.

16

saw, heard, or were aware of [the importer's] alleged misrepresentations at any relevant time).

Rather, Plaintiff's GBL § 349 claim is premised on an omission — Defendants' alleged failure to

verify the account holder before processing the EFTs.  (SAC ¶¶ 52, 54–56.)  However, this

omission, which does not involve information known to Defendants and withheld from Plaintiff,

does not appear to be the type of act or practice required under the statute.  Even if these

omissions were sufficient, Plaintiff has not sufficiently alleged that they are material, as a

reasonable consumer acting reasonably under the circumstances likely would have realized — at

some point over the almost one year that the EFTs allegedly occurred — that tens of thousands

of dollars were missing from their account.

 Accordingly, the Court dismisses Plaintiff's GBL § 349 claim.

### d. GBL § 380-s

 Defendants argue that Plaintiff's GBL § 380-s claim fails because it does not meet the

particularity standards set forth in Rule 9 of the Federal Rules of Civil Procedure for pleading

fraud, as Plaintiff has not alleged "any facts showing [that they] . . . defraud[ed] him, let alone

who took those actions, when and where they happened, or how they were fraudulent."  (Defs.'

Mem. 8–9; Defs.' Reply 7.)  In addition, Defendants argue that Plaintiff's claim fails because it

does not involve credit reporting, which they assert is an integral component to a GBL § 380-s

claim.  (Defs.' Mem. 9; Defs.' Reply 8.)

 Plaintiff argues that by "engag[ing] in deceptive acts . . . result[ing] in the unauthorized

misappropriation" of Plaintiff's funds as a part of an "illegal scheme," Defendants are liable for

"participating in the theft of Plaintiff's identity" under GBL § 380-s.  (Pl.'s Opp'n 16.)

 "An identity theft occurs when someone misappropriates another person's name or other

personal information in order to engage in fraud or other crimes."  *Galper v. JP Morgan Chase*

*Bank, N.A.*, 802 F.3d 437, 441 (2d Cir. 2015).  GBL § 380-s "generally prohibits actual or attempted identity theft, defined in relevant part to include the knowing and intentional fraudulent use of something of value in the name of another person without that person's consent."  *Id.* at 442.  Specifically, GBL § 380-s provides that:

> No person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use, or attempt to obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent.

N.Y. Gen. Bus. Law § 380-s.  However, GBL § 380-s "authorizes a civil action only if the identity theft 'resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided.'"  *Galper*, 802 F.3d at 442 (quoting N.Y. Gen. Bus. Law § 380-*l*); *Dardashtian v. Gitman*, No. 17-CV-4327, 2017 WL 6398718, at *7 (S.D.N.Y. Nov. 28, 2017).  "Courts dismiss claims for Section 380-s violations where they do not involve credit reporting or do not appear to fall within the intended scope of the section."[11]  *Id.* (collecting cases).

Plaintiff's conclusory allegations that, by processing EFTs without verifying the account holder's identity, Defendants engaged in an "illegal scheme" to "misappropriate[e]" Plaintiff's funds and "participat[ed] in identity theft" are insufficient to state a claim under GBL § 380-s.  (Pl.'s Opp'n 16); *McIver v. Murray*, No. 20-CV-10538, 2021 WL 467155, at *2 (S.D.N.Y. Feb. 7, 2021) (dismissing *pro se* plaintiff's GBL § 380-s claim where she alleged that the defendant

---

[11]  The federal Fair Credit Reporting Act "preempts [GBL § 380-s] claims that concern a defendant's responsibilities as a furnisher of information under the FCRA."  *Galper v. JP Morgan Chase Bank*, 802 F.3d 437, 449 (2d Cir. 2015).  Plaintiff has alleged that his claims are not preempted "since they do not involve information transmitted to any credit reporting agency."  (SAC ¶ 61.)  Because Plaintiff's claim is not "based on allegations of erroneous or otherwise improper furnishing," the FCRA does not preempt it.  *Galper*, 802 F.3d at 449.

had stolen her identity since "the 1990s," used her "SS#," and that there was a "car & house" in

her name but "did not provide any details of the events, such as when and where they occurred");

*Abergel v. Santander Bank*, No. 19-CV-6535, 2019 WL 4141668, at *1–2 (S.D.N.Y. Aug. 30,

2019) (dismissing *pro se* plaintiff's GBL § 380-s claim where he alleged "[f]raudulent charges

after I.D. theft on [his] account . . . [f]ailure to validate [i]dentity . . . and failure to authenticate

[his] account").  In addition, Plaintiff has failed to allege that Defendants' actions implicate

credit reporting, as is required to recover under GBL § 380-s.  *See* GBL § 380-*l* (limiting GBL

§ 380-s claims to identity thefts that "resulted in the transmission or provision to a consumer

reporting agency of information that would otherwise not have been transmitted").  Instead,

Plaintiff has specifically alleged that "[t]hese claims . . . do not involve information transmitted

to any credit reporting agency."  (SAC ¶ 61); *see also Dardashtian*, 2017 WL 6398718, at *7

(dismissing GBL § 380-s claim where the plaintiff failed to allege that the defendant's

unauthorized use of his email address "implicate[d] credit reporting"); *Guardsman Elevator Co.*

*v. Apartment Inv. & Mgmt. Co.*, No. 116447/06, 2010 WL 3393269 (N.Y. Sup. Ct. Aug. 20,

2010) (dismissing GBL § 380-s claim based on the defendants' alleged improper use of certain

licenses the plaintiff obtained to perform elevator modernization work because "[t]he basis for

[the plaintiff's] claim herein does not involve credit reporting in any way"); *Leser v.*

*Karenkooper.com*, 856 N.Y.S.2d 498, 2008 WL 192099, at *3 (N.Y Cnty. Sup. Ct. Jan. 14,

2008) (dismissing section 380-s claim where it did "not involve credit reporting in any way and

thus [did] not appear to fall within the intended scope of GBL § 380-s"); *cf. Arkadiusz Bigas v.*

*Jadwiga Kryla*, No. 621288/2019, 2020 N.Y. Misc. LEXIS 16978, at *7–8 (Suffolk Cnty. Sup.

Ct. Sept. 24, 2020) (finding GBL § 380-s claim plausibly alleged where the plaintiff alleged that

the defendant knowingly "attempted to obtain and/or obtained" services in plaintiff's name"

through "Northwell Health" without his consent and that he suffered damages to his credit as a result).  Thus, based on Plaintiff's own allegations, it appears that he is unable to state a claim under GBL § 380-s.

Accordingly, the Court dismisses Plaintiff's GBL § 380-s claim.

### e.   Conversion

Defendants argue that Plaintiff's conversion claim fails because he never demanded the return of the funds at issue, (Defs.' Mem. 4), and failed to respond to this argument in his opposition, in effect abandoning this claim,[12] (Defs.' Reply 1).  In addition, Defendants argue that "one acting in good faith may obtain title to money from a thief," and because they were neither part of a scheme with Bruczynski to steal Plaintiff's funds nor aware that Bruczynski was using stolen funds, they are bona fide holders of the funds and have superior title to them.[13] (Defs.' Reply 2; Defs.' Mem. 4.)

Plaintiff argues that he has sufficiently alleged conversion because he has alleged that Defendants took physical possession of specific, identifiable funds without his consent and thus

---

[12] Although Plaintiff failed to respond to this particular argument, he does oppose the dismissal of his conversion claim on other grounds.  Therefore, the Court does not deem his conversion claim abandoned.  *BYD Co. v. VICE Media LLC*, --- F. Supp. 3d ---, ---, 2021 WL 1225918, at *6 (S.D.N.Y. Mar. 31, 2021) ("Plaintiffs' failure to oppose [d]efendants' specific argument in a motion to dismiss is deemed waiver of that issue." (quoting *Kao v. Brit. Airways, PLC*, No. 17-CV-232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018))); *MYL Litig. Recovery 1 LLC v. Mylan N.V.*, No. 19-CV-1799, 2020 WL 1503673, at *7 (S.D.N.Y. Mar. 30, 2020) ("[The plaintiff] has failed to respond to this argument in its opposition.  Accordingly, any argument opposing [the defendant's] position here is waived." (citing *Kao*, 2018 WL 501609, at *5)).

[13] The Court notes that Defendants' bona fide holder argument is an affirmative defense that they have the burden of alleging and proving.  *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 WL 4038826, at *3 & n.14 ("[W]hile [the defendant's] bona fide purchaser defense may defeat [the plaintiff's conversion] claims on the merits, it is an affirmative defense that [the defendant] has the burden of alleging and proving." (footnote omitted)).  The Court declines to consider this argument on a motion to dismiss.

"exercised [unauthorized] dominion and control over said monies." (Pl.'s Opp'n 11–12.)  In

support, Plaintiff argues that "[g]ood [f]aith and lack of knowledge is not a defense to

conversion," and, in any event, "Defendants knew or should have known that [he] did not

authorize the illegal EFTs." (*Id.*)

Under New York law, conversion is "the unauthorized assumption and exercise of the

right of ownership over goods belonging to another to the exclusion of the owner's rights."

*United States v. Sampson*, 898 F.3d 270, 277 n.5 (2d Cir. 2018) (quoting *Thyroff v. Nationwide*

*Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)); *see also Zamora v. Fit Int'l Grp. Corp.*, 834

F. App'x 622, 627 (2d Cir. 2020) (same).  The "[t]wo key elements of conversion are (1) [the]

plaintiff's possessory right or interest in the property . . . and (2) [the] defendant's dominion over

the property or interference with it, in derogation of [the] plaintiff's rights." *Zamora*, 834 F.

App'x at 629 (alteration in original) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8

N.Y.3d 43, 50 (2006)); *Thyroff*, 460 F.3d at 404.  To state a claim, a plaintiff must allege:

"(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had

ownership, possession or control over the property before its conversion; and (3) defendant

exercised an unauthorized dominion over the [property], to the alteration of its condition or to the

exclusion of the plaintiff's rights." *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 459

(S.D.N.Y. 2021) (alteration in original) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541

(S.D.N.Y. 2004)).  "[F]unds of a specific, named bank account are sufficiently identifiable to

support a conversion claim." *Dardashtian*, 2017 WL 6398718, at *7 (quoting *Newbro v. Freed*,

409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006), *aff'd*, 2007 WL 642941 (2d Cir. Feb. 27, 2007)).

"[A]n action will lie under New York law for conversion of money where there is an obligation

to return or otherwise to treat in a particular manner the specific money in question." *Id.*

(quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 41–42 (2d Cir. 1997)).  "The tort of conversion

does not require defendant's knowledge that he is acting wrongfully, but merely an intent to

exercise dominion or control over property in a manner inconsistent with the rights of another."

*LoPresti*, 126 F.3d at 42 (quoting *Fashions Outlet of Am., Inc. v. Maharaj*, No. 88-CV-7231,

1991 WL 143421, at *2 (S.D.N.Y. July 22, 1991)).

       Plaintiff fails to state a claim for conversion.  Defendants do not dispute that Plaintiff has

plausibly alleged the first two elements of conversion — that the property subject to conversion

(i.e., funds from a specific, named bank account) was a specific, identifiable thing and that he

was the rightful owner of property before its alleged conversion.  (SAC ¶¶ 5, 9, 16.)  However,

Plaintiff has not plausibly alleged the third element of conversion — that Defendants exercised

unauthorized dominion over these funds — because Plaintiff has not pled facts to support a

plausible inference that Defendants had an obligation to return the funds and refused to do so.

Although Plaintiff argues that Defendants "knew or should have known" that he did not

authorize the EFTs, (*see* Pl.'s Opp'n 11), the SAC does not contain factual allegations that, if

true, would support this inference.  Rather, Plaintiff alleges that the pay-by-phone systems

Bruczynski used to initiate the EFTs did not require her to input the account holder's name,

(SAC ¶ 22).  Nor has Plaintiff alleged that he ever demanded the return of the funds at issue,

which would have created the necessary obligation to return them.  *See State v. Seventh

Regiment Fund*, 98 N.Y.2d 249, 260 (2002) ("[C]ourts from an early date have protected

unsuspecting defendants by requiring plaintiffs, under some circumstances, to show that they

demanded the goods and were refused.  In this way, a bona fide purchaser who performs no

wrongful act relative to a plaintiff's goods is ensured 'an opportunity to deliver the property to

the true owner, before he shall be made liable as a [tortfeasor] for a wrongful conversion.'" (first

22

quoting *Gillet v. Roberts*, 57 N.Y. 28, 34 (1874); then citing *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318 (1991); and then citing *Pease v. Smith*, 61 N.Y. 477, 481 (1875))); *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) ("Where, as here, a plaintiff alleges the re-conversion of funds by third parties, the complaint must allege that the recipient had reason to know the funds had been unlawfully converted." (first citing Laura B. Bartell, *The Lease of Money in Bankruptcy: Time for Consistency?*, 16 Bankr. Dev. J. 267, 294–95 (2000); then citing *Fed. Ins. Co. v. Banco de Ponce*, 751 F.2d 38, 41 (1st Cir. 1984); and then citing *Hinkle v. Cornwell Quality Tool Co.*, 40 Ohio App. 3d 162 (Ct. App. 1987))), *as amended* (Nov. 28, 2000); *cf. T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 WL 4038826, at *7 (E.D.N.Y. Oct. 14, 2010) (finding that defendant-bank successfully stated a conversion cross-claim against defendant-individual where it alleged, among other things, that "it demanded return of the funds" and was "refused"); *Newbro*, 409 F. Supp. 2d at 396–97 (rejecting the defendants' argument, on summary judgment, that they had no "obligation to return" funds that they mistakenly believed were theirs when the plaintiff "owned the money invested in his account and lost possession without his consent" and there was "no dispute" that the defendants had refused to comply with a demand for return of the funds).

Accordingly, the Court dismisses Plaintiff's conversion claim.

### f.  Negligence

Defendants argue that Plaintiff's negligence claim fails because (1) it is duplicative of his claims under the EFTA and GBL §§ 349 and 380-s, (Defs.' Mem. 10), (2) Plaintiff has failed to plead the existence of a duty that Defendants breached because he has not plausibly alleged a violation of any of these statutes or the existence of a nonstatutory duty, (Defs.' Mem. 11; Defs.'

Reply 9), and (3) the Corporate Defendants were not the proximate cause of Plaintiff's injuries — Bruczynski was, (Defs.' Mem. 11–12).

Plaintiff argues that (1) the duty element of his claim has been satisfied by the duties Defendants owed him through the EFTA, GBL §§ 349 and 380-s, and 12 C.F.R. § 1005.3(b)(2) and that (2) by processing unauthorized EFTs and thereby breaching these duties, Defendants should reasonably have foreseen that Plaintiff would be financially harmed.  (Pl.'s Opp'n 17.)

To establish a prima facie case of negligence under New York law, "a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach."  *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 117 (2d Cir. 2013) (listing elements); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (same).  Furthermore, a plaintiff must establish that his injury was foreseeable. *Aegis Ins. Servs. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013) ("[A] plaintiff must establish that a harm was within the ambit of reasonably foreseeable risk . . . ."); *Pinero v. Rite Aid of N.Y., Inc.*, 743 N.Y.S.2d 21, 22 (App. Div. 2002) ("To establish a claim in negligence, plaintiff must show that the defendant owed her a duty to protect her from injury; a duty that only arises when the risk of harm is reasonably foreseeable."), *aff'd*, 753 N.Y.S.2d 805 (2002).

"One way to prove negligence is by alleging the violation of a federal [statute or regulation] or state statute, which constitutes *negligence per se*."  *Nassau Cnty. Bridge Auth. v. Olsen*, 130 F. Supp. 3d 753, 757 (E.D.N.Y. 2015); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) ("The violation of federal statutes and regulations is commonly given *negligence per se* effect in state tort proceedings." (quoting

24

Restatement (Third) of Torts § 14 Reporters' Note, Cmt. a (Tent. Draft No. 1, Mar. 28, 2001))).

In these cases, establishing the violation of a statute or regulation that imposes a duty

"establishes the duty and breach elements of a negligence claim." *Sanchez v. Ehrlich*, No. 16-

CV-8677, 2018 WL 2084147, at \*8 (S.D.N.Y. Mar. 29, 2018); *see also In re GE/CBPS Data*

*Breach Litig.*, No. 20-CV-2903, 2021 WL 3406374, at \*10 (S.D.N.Y. Aug. 4, 2021) ("[T]he

unexcused omission or violation of a duty imposed by statute for the benefit of a particular class

*is* negligence itself." (citing *Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434

(S.D.N.Y. 2019))).  "Violation of a statute may constitute negligence *per se* 'if a statute is

designed to protect a class of persons, in which the plaintiff is included, from the type of harm

which in fact occurred as a result of its violation.'" *Jordan v. Tucker*, No. 13-CV-6863, 2017

WL 2223918, at \*12 (E.D.N.Y. May 19, 2017) (quoting *German by German v. Fed. Home Loan*

*Mortg. Corp.*, 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)).  However, "[a] plaintiff still must

establish causation." *Sanchez*, 2018 WL 2084147, at \*8 (citing *Dance v. Town of Southampton*,

467 N.Y.S.2d 203, 206 (App. Div. 1983)); *Dance*, 467 N.Y.S.2d at 206 ("Negligence per se is

not liability per se, however, because the protected class member still must establish that the

statutory violation was the proximate cause of the occurrence.").

Plaintiff fails to state a negligence claim.  Even if the various state and federal statutes

and regulations Plaintiff identifies impose a duty on Defendants, Plaintiff has failed to plausibly

allege the breach element of his negligence claim because he has failed to plausibly allege that

Defendants violated these statutes and regulations.  *Gencarelli v. Coca-Cola Co.*, No. 20-CV-85,

2020 WL 2561258, at \*7 (N.D.N.Y. Apr. 13, 2020) (quoting *German by German*, 896 F. Supp.

at 1397) (dismissing negligence claim based on negligence *per se* where *pro se* plaintiff failed to

demonstrate how defendants violated a statute); *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,

468 F. Supp. 2d 508, 522–23 (S.D.N.Y. 2006) (dismissing negligence claim based on negligence *per se* where the plaintiff failed to "distinguish[] a particular . . . statute that was violated").

Accordingly, the Court dismisses Plaintiff's negligence claim.

### g.   Declaratory judgment

Defendants argue that Plaintiff's "cause of action for declaratory judgment" fails because "it 'parallels . . . other claims and merely seeks a declaration of the same rights and obligations' sought through those other claims." (Defs.' Mem. 13 (quoting *Campione v. Campione*, 942 F. Supp. 2d 279, 285 (E.D.N.Y. 2013)); *see also* Defs.' Reply 11–12 (arguing that Plaintiff "ignores" this argument).) In addition, Defendants argue that because "Plaintiff's other causes of action fail . . . , Plaintiff's claim for declaratory relief . . . fails as well." (Defs.' Mem. 13.)

Plaintiff argues that "the sole consideration under a motion to dismiss [a claim for declaratory judgment] is whether a cause of action exists," and "[i]n this [c]ase the causes of action exist entitling Plaintiff to a declaratory judgment." (Pl.'s Opp'n 19 (citing *Staver v. Skrobisch*, 533 N.Y.S.2d 967 (1988)).)

A plaintiff cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed since the Declaratory Judgment Act only created a procedural mechanism and not an independent cause of action. *Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017) ("[T]he Declaratory Judgment Act 'is procedural only . . . and does not create an independent cause of action.'" (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012))); *Chevron Corp.*, 667 F.3d at 244 ("The [Declaratory Judgment Act] gives a district court the discretion to 'declare the legal rights and other legal relations of any interested party seeking such declaration.' But that discretion does not extend to the declaration of rights that do not exist under law. Like a preliminary injunction, a declaratory judgment relies on a

26

valid legal predicate.  The [Declaratory Judgment Act] is 'procedural only,' and 'does not create an independent cause of action.'" (citations omitted)); *Knox v. Ironshore Indem. Inc.*, No. 20-CV-4401, 2021 WL 256948, at *4 (S.D.N.Y. Jan. 26, 2021) ("The Declaratory Judgment Act is 'procedural only and does not create an independent cause of action.' . . . Thus, a plaintiff may not use the Declaratory Judgment Act to 'create legal rights that do not otherwise exist.'" (quoting *Chevron Corp.*, 667 F.3d at 244–45)); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) ("[A] 'request for a declaratory judgment is not a cause of action; it is a request for a remedy that does not exist independent of a plausible underlying claim for relief.'" (quoting *Lisa Coppola, LLC v. Higbee*, No. 19-CV-678, 2020 WL 1154749, at *10 (W.D.N.Y. Mar. 10, 2020))); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80 (S.D.N.Y. 2012) ("[T]he Declaratory Judgment Act is not a source of federal substantive rights, because it does not 'provide an independent cause of action.  Its operation is procedural — to provide a form of relief previously unavailable.'"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action.").

Because the Court has dismissed Plaintiff's underlying substantive claims for failure to state a claim, Plaintiff is not entitled to independent declaratory relief.[14]  *See Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *13 (E.D.N.Y. Mar. 15, 2021).

### h.   Leave to amend

The Court grants Plaintiff leave to file a third amended complaint within thirty days of this Memorandum and Order.  If Plaintiff chooses to file a third amended complaint, he must clarify the nature of his EFTA claims and correct the other deficiencies the Court has identified.

---

[14]   Defendants request that "to the extent that Plaintiff's claims are not dismissed, his request for attorneys' fees . . . be struck." (Defs.' Mem. 13–14.)  Because the Court dismisses the SAC in its entirety, it does not address this request.

If Plaintiff fails to timely file a third amended complaint or to show good cause why he cannot, the Court will direct the Clerk of Court to enter judgment dismissing the SAC as against the Corporate Defendants for the reasons stated above.

**III.   Conclusion**

For the reasons stated above, the Court grants the Corporate Defendants' motion and dismisses the SAC as against them.  In addition, the Court grants Plaintiff leave to file a third amended complaint within thirty days.

Dated:  September 28, 2021
           Brooklyn, New York

                                   SO ORDERED:

                                        s/ MKB

                                   _____
                                   MARGO K. BRODIE
                                   United States District Judge